UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABO STAFFING SERVICES, INC.,

                     Plaintiff,                    Civil Case No. 22-11696
                                                      Honorable Linda V. Parker

v.

UNITEDHEALTHCARE INSURANCE
COMPANY,

                     Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (ECF NO. 5)

On July 22, 2022, Plaintiff ABO Staffing Services Inc. ("ABO") initiated this action against its healthcare provider, UnitedHealthcare Insurance Company ("United"). (ECF No. 1.) On this same date, ABO filed a motion for a preliminary injunction.[1] (ECF No. 2.) On July 26, 2022, ABO filed an amended complaint (ECF No. 4) and a motion for a temporary restraining order ("TRO") and/or preliminary injunction (ECF No. 5). ABO alleges a breach of contract claim (Count I) and a "claim" for injunctive relief (Count II).[2] (ECF No. 4.) On July 29,

_____

[1] ABO's original motion for preliminary injunction (ECF No. 2) is moot as ABO filed a subsequent motion for preliminary injunction (ECF No. 5).

[2] At the August 10, 2022 hearing, ABO's counsel argued that the merits of Count I were not properly before the Court at this time and that it was instead litigating the

2022, the Court granted a TRO in favor of ABO and set a briefing schedule and hearing on the motion for a preliminary injunction.  (ECF No. 10.)  The TRO extended health care coverage through United to all of ABO's employees and their dependents until August 12, 2022.  On August 4, 2022, ABO posted a TRO bond of $94,468.

The preliminary injunction motion is now fully briefed.  (ECF Nos. 14, 16.) ABO amended its original request for a preliminary injunction, requesting health care coverage of its employees from United until September 1, 2022, instead of at least sixty (60) days.  (ECF No. 16 at Pg ID 3208.)  The Court held hearings concerning the motion for a preliminary injunction via videoconference on August 10 and 11, 2022.  For the reasons discussed below, the Court is not persuaded that the issuance of a preliminary injunction until September 1, 2022, is proper and, therefore, denies ABO's motion.

### Applicable Law

When a party moves for a preliminary injunction, the district court considers four factors to determine whether to grant relief:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the

---

"claim" in Count II.  However, injunctive relief is a remedy or form of relief, not a cause of action.  *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (rejecting claims for quiet title and injunctive relief because "these requests are remedies and are not separate causes of action.")

> injunction would cause substantial harm to others; and (4)
> whether the public interest would be served by issuance of the
> injunction."

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022)

(quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th

Cir. 2014)).  These factors must be balanced.  *Id.*  "But where there is no likelihood

of either success on the merits or irreparable harm, an injunction is unwarranted—

regardless of the showing on the other factors."  *Id.* at 366 (citations omitted).

"[T]he preliminary injunction is an 'extraordinary remedy involving the

exercise of a very far-reaching power, which is to be applied only in the limited

circumstances which clearly demand it.'"  *Leary v. Daeschner*, 228 F.3d 729, 739

(6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d

802, 811 (4th Cir. 1991)).  The party moving for the injunction has the burden to

show that the circumstances clearly demand it.  *Overstreet v. Lexington-Fayette

Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## Factual Background

Initially, on January 17, 2019, a company named ABO Preferred Personnel

Svcs ("ABO PPS") applied for group health benefits from United.  ABO PPS

represented that it was not a Professional Employer Organization ("PEO") and did

3

not utilize the services of any PEO.[3]  (ECF No. 15-2 at Pg ID 3036; ECF No. 15-3 at Pg ID 3066.)  United routinely asks prospective group customers if they operate as a PEO or use a PEO because that status is material to United.  (*See* Morris Decl. at ¶ 27, ECF No. 15 at Pg ID 3052-53.)  As Michael Morris, an Executive Director for Sales and Account Management for United, explains, this type of business with PEOs can affect risks and implicates state and federal regulatory challenges in dealing with a PEO with customers in multiple states.  (*Id.*)  When submitting its initial application, ABO PPS was required to sign an attestation to "answer all questions completely and accurately."  (ECF No. 15-2 at Pg Id 3064.)

ABO PPS renewed its coverage with United in 2020 and 2021 without incident.  In the Fall of 2021, ABO PPS and United began the renewal process for the 2022 group policy.  To quote premium rates for the 2022 policy year, United ran a report within its electronic enrollment system on November 19, 2021. According to that report, ABO PPS listed 41 employees enrolled in the group, with an additional 13 dependents, for a total of 54 covered lives.  (Morris Decl. at ¶ 11, ECF No. 15 at Pg ID 3046-47.)  The quote, inter alia, stated, "[r]ates are based on your submitted census.  [United] reserves the right to adjust the rates from audit date back to effective date if any of the following changes: - Enrollment +/- 10% . .

---

[3] PEOs are companies that perform back-office operations for customers, including human resource tasks such as payroll, risk management, compliance, and benefits administration for their customers' employees.  *See* MCL 338.3721 et seq.

. [or] Any Material Changes." (ECF No. 15-7.)  Through its broker, ABO PPS

elected to accept the quote and renew its coverage for 2022 with four separate

group policy options.  (*See* Morris Decl. at ¶ 15, ECF No. 15 at Pg ID 3047.)

The 2022 group policies state, "the Group's *Application* is made a part of

this Policy".  (ECF No. 1-2 at Pg ID 15, 29, 43, 57 (emphasis in original.)  This is

consistent with United's counsel representation in the hearings that the Group

Application from 2019 automatically renews each year.  The policies also define

material misrepresentation as follows:

> **Material Misrepresentation** - any oral or written
> communication or conduct, or combination of communication
> and conduct, that is untrue and is intended to create a
> misleading impression in the mind of another person.  A
> misrepresentation is material if a reasonable person would
> attach importance to it in making a decision or determining a
> course of action, including but not limited to, the issuance of a
> policy or coverage under a policy, calculation of rates, or
> payment of a claim.

(ECF No. 1-2 at Pg ID 16, 30, 44, 58.)

Finally, each policy, in relevant part also contained the following language

in section 3.1 regarding Premiums as follows:

> We also have the right to change the Schedule of Premium
> Rates at any time if the Schedule of Premium Rates was based
> upon a *Material Misrepresentation* relating to health status that
> resulted in the Premium rates being lower than they would have
> been if the Material Misrepresentation had not been made.  We
> have the right to change the Schedule of Premium Rates for this
> reason retroactive to the effective date of the Schedule of

> Premium Rates that was based on the Material
> Misrepresentation.

(*Id*. (emphasis added).)

On December 1, 2021, ABO PPS informed United that it had changed its name to ABO and had a new Tax ID number.  (ECF No. 15-8.)  On December 6, 2021, ABO stated it had 49 employees (with 12 dependents of employees), for a total of 61 covered lives.  (*See* ECF No. 15-9.)

At the hearing on August 11, 2022, David Otto, president, and owner of America's Back Office Inc. ("Back Office"), testified that he began working with ABO as the plan administrator for ABO months before the name change.  (*See* Otto. Aff., ECF No. 16-3 at Pg ID 3222.)  ABO has maintained at the hearings and in its briefings that it is not a PEO.  (*See* ECF No. 16 at Pg ID 3208.)  However, as Otto testified, Back Office is a PEO.  (*See* ECF No. 16 at Pg ID 3208; *see also* Otto. Aff., ECF No. 16-3 at Pg ID 3210.)  As such, at the time of renewal of the 2022 group policies, ABO was utilizing a PEO.

Further, the Court also notes that in the 2019 group policy application, ABO PPS, now ABO, lists JoAnn Jones as the "enrollment employer admin contact name" and jjones@abopeo.com as the "employer admin contact email."  (*See* ECF No. 15-3 at Pg ID 3066.)  This same email is CC'd on a July 20, 2022 correspondence with Otto, dotto@abopeo.com.  (ECF No. 5-8 at Pg ID 2671.)  At the hearing, Otto testified that JoAnn Jones worked for Back Office as the head of

employee benefits.  Jones and another Back Office employee were responsible for
significant enrollment activity via the United self-serve portal from December
2021 until the present.  (Morris Decl. at ¶ 30, ECF No. 15 at Pg ID 3054.)  The
Court can draw a reasonable inference that Jones, as an employee of Back Office,
and her email jjones@abopeo.com was listed on the 2019 application.

In 2022, enrollment by ABO with United began to climb sharply, going
from approximately 60 individuals in December 2021 to 1,400 or more individuals
in January 2022.  (*See* ECF No. 15-10.)  The newly enrolled individuals resided in
thirty-four (34) states, when before December 2021, all employees resided in
Michigan.  (Morris Decl. at ¶¶ 17, 32, ECF No. 15 at Pg ID 3048, 3055.)  These
individuals were enrolled for coverage via the United self-serve portal.  (ECF No.
16 at Pg ID 3208.)  United did not became aware of the massive additions until
April 2022 when it was performing enhancements to the portal and reviewed the
enrollment for ABO.  (ECF No. 14 at Pg ID 2719.)  According to hearing
testimony, as a result, United began communicating with ABO's health insurance
brokers but did not immediately send notice directly to ABO.

ABO claims that United gave notice on June 30, 2022, that it intended to
rerate ABO's group insurance policies effective July 1, 2022, and that ABO had to
accept the new rates by July 11, 2022, or United would cancel the group policies
on August 1, 2022.  (ECF No. 1-5.)  Additionally, United demanded that ABO

complete and return an eligibility audit by August 1, 2022, and sign a letter of Agreement.  (ECF Nos. 1-6, 1-8.)

On July 22, 2022, ABO initiated this action against United.  (ECF No. 1.) On July 26, 2022, ABO filed a "Verified First Amended Complaint and Jury Demand."[4]  (ECF No. 4.)  Curiously, the complaint was signed by Otto on behalf of Back Office.  (*See* ECF No. 4 at Pg ID 1347.)  Otto also acknowledged such at the hearing but abrogated his role stating he had not reviewed the complaint in detail.

In its reply brief in support of its motion for a preliminary injunction, ABO attached an affidavit from Otto.  (ECF No. 16-3.)  Otto explains that approximately 691 employees of ABO and their dependents enrolled in United policies, but about two-thirds (2/3) have since obtained alternative coverage.  He explains that the remaining one-third (1/3) of the employees will obtain alternative coverage as of September 1, 2022.  At the hearings, it became clear that the exact number of individuals remaining enrolled was a moving target.  At the hearing on August 11,

_____

[4] United argues that pursuant to Rule 65(b)(1)(A) of the Federal Rules of Civil Procedure, Otto signed the verified complaint "without the required 'penalties of perjury' language needed to make the verification effective."  (ECF No. 14 at Pg ID 2709.)  This rule applies to a TRO and was not raised before the Court issued the TRO on July 29, 2022.  In response, ABO argues that any clerical issues were inadvertent due to the emergency nature of the lawsuit.  (ECF No. 16 at Pg ID 3213.)  As the rule applies to TROs, the issue is now moot.

2022, counsel for ABO stated that only 82 remaining employees were covered, while United's counsel stated that 386 remaining individuals were covered.

## Parties Arguments

United opposes a preliminary injunction and argues ABO has not proven any substantial likelihood of success on the merits because ABO made material misrepresentations that it is not a PEO or utilizing a PEO and when it added hundreds of enrollees to the policy.  (*See* ECF No. 14 at Pg ID 2726-29.)  Next, United argues that ABO has not proven irreparable harm because it has known about the rate increase since April and had months to obtain alternative insurance for the affected employees.  (*Id*., Pg ID 2730-32.)  Further, United argues that the Affordable Care Act makes insurance coverage available to these individuals.  (*Id*.)  Finally, regarding the public policy and the harm United will suffer, United maintains that ABO should be required to abide by its contract and that it should not be required to continue to provide coverage to ABO as an unlicensed PEO.  (*Id*., Pg ID 2732-33.)

ABO requests a preliminary injunction until September 1, 2022.  (ECF No. 16 at Pg ID 3208.)  ABO counters that it is not a PEO but rather a staffing company.  (*Id*.)  ABO argues that it is likely to succeed on the merits of its breach of contract claim because United has "no contractual or other right to increase or alter the Group Policy at this time."  (*Id*., Pg ID 3209.)  Further, ABO represents

that it has made no material misrepresentation about the number of enrollees because it "has no ability to anticipate the number of employees who will enroll in an employee sponsored benefits plan." (*Id*., Pg ID 3210.) ABO next explains that it will suffer irreparable harm if an injunction is not issued as one-third (1/3) of its covered employees will be without coverage. (*Id*., Pg ID 3212.) Regarding the third factor, ABO argues that United will not suffer substantial harm if an injunction is issued, as any harm would be financial and can be addressed later. (*Id*.) Finally, ABO argues that issuing a preliminary injunction would serve the public interest in preserving health coverage for the employees and their dependents and enforcing the policy language of when and how the policy can be rescinded or re-rated. (*Id*., Pg ID 3212-13.)

## Analysis

### A.    ABO's Likelihood of Success on the Merits

To prove a breach of contract claim under Michigan law, the plaintiff must demonstrate that there was a contract between the parties requiring the performance of specific actions, one party breached the contract, and the breach caused injury to the other party. *Bank of Am., N.A. v. First Am. Title Ins.*, 878 N.W.2d 816, 829 (Mich. 2016); *see also Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). To the extent the Court can discern from the briefings and hearing testimony, the parties do not contest the fact that an

insurance policy contractually binds them.[5]  Instead, the element in dispute is

whether United's actions in sending notice of a re-rate and possible recission was a

breach of contract.

ABO argues that it will likely prevail on the merits of its breach of contract

claim because United attempted to re-rerate or rescind the contract prior to January

1, 2023, as the policy provides.  United counters, arguing that the basis for its re-

rate and rescission was because of a material misrepresentation as set forth under

Section 3.1 of the Policy.  (*See* ECF No. 1-2 at Pg ID 16, 30, 44, 58.)  The policies

define material misrepresentation as communication or conduct "that is untrue and

is intended to create a misleading impression. . . ." (*Id.*)  Further, "[a]

misrepresentation is material if a reasonable person would attach importance to it

in making a decision or determining a course of action, including but not limited

to, the issuance of a policy or coverage under a policy, calculation of rates, or

payment of a claim." (*Id.*)  United argues that the material misrepresentations are:

1) the recent accelerated enrollment of employees and their dependents; and 2)

---

[5] At the hearing, Otto alleged that the policy was not signed and characterized it as a "unilateral" contract.  However, since ABO's counsel did not raise the issue, the Court will not address it.

ABO is not a PEO or has not utilized a PEO.  The Court finds the second argument more persuasive.

Regarding the accelerated enrollment of employees and dependents, the Court finds conflicting testimony on whether the significant change in enrollment was a material misrepresentation.  To date, the only evidence submitted by United of this phenomenon constituting a material misrepresentation is the November 19, 2021 quote, which informs the parties that a 10 percent increase or decrease in enrollment is subject to a re-rate.  However, when asked at the hearing whether the quote was a part of the policy, counsel for United failed to identify any such language in the policy or language indicating that the quote was incorporated by reference into the policy.  Notably, in its argument that ABO failed to disclose its affiliation with or status as a PEO, United asserts that the entire Policy includes "the Certificate(s) of Coverage, the Schedule(s) of Benefits, the Group Application, and any Amendments, Notices of Change, and Riders. . . ."  (ECF No. 14 at Pg ID 2714 (emphasis removed) (quoting ECF No. 15-4 at Pg ID 3075.)  Standing alone, United's quote and the increase in enrollment does not demonstrate a material misrepresentation by ABO.

Regarding the allegation that ABO misrepresented that it was not a PEO or did not utilize a PEO the Court finds this argument to be more compelling.  At this stage, it is not clear whether ABO is a defacto PEO, despite them adamantly

denying such. However, ABO likely made a material misrepresentation during the renewal process for its 2022 group policies with United, and potentially in preceding years. While Otto testified that he only became the Plan Administrator in 2021, ABO did not disclose or update its policy application to reflect its *use* of Back Office as a PEO. United indicated that it would not have issued the policy on its existing terms had it known the truth about ABO due to various regulatory issues. (Morris Decl. at ¶ 32, ECF No. 15 at Pg ID 3055.) As such, United argues that it has a right to re-rate or rescind ABO's group policies. The Court agrees for the purpose of this motion. The Court also notes that had ABO and Back Office been more forthcoming, and ABO disclosed that it utilized a PEO, hundreds of individuals would have never been at risk of losing their health insurance benefits. Because of this alleged material misrepresentation and the factual evidence to support the allegation, ABO has failed to establish a substantial likelihood of success on the merits of its breach of contract claim.[6] Therefore, this factor strongly weighs in favor of denying ABO's motion for a preliminary injunction.

### B.     ABO's Irreparable Injury Absent an Injunction

---

[6] In making this finding, the Court is not oblivious to the various other irregularities on the record regarding the relationship between ABO and Back Office. For example, Otto testified that ABO is only responsible for marketing and recruitment functions and transferring data to Back Office, which it performs through an online portal. In response, United alleged in closing arguments that ABO was a "shell" company for Back Office. While the Court need not evaluate

ABO must "demonstrate that irreparable injury is likely in the absence of an injunction," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and that the injury is "both certain and immediate, rather than speculative or theoretical," *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury." *Patio Enclosures, Inc. v. Herbst*, 39 Fed. App'x 964, 969 (6th Cir. 2002) (quoting *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 340 (Ohio App.1997)). Finally, this element is significant as "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).; *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003) (quoting *MetroBanc v. Fed. Home Loan Bank Bd.,* 666 F. Supp. 981, 984 (E.D.Mich.1987) (A finding of irreparable harm is 'the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction.'")).

---

the veracity of this charge, it is indeed peculiar that Otto himself would sign the verified amended complaint, submit an affidavit, and testify on ABO's behalf. Also, Otto testified at the August 11, 2022 hearing that "my staff, and my brokerage, filled out all the required paperwork on the group application."

ABO alleges it will suffer irreparable harm due to its employees losing their health coverage.  However, as noted at the hearings, most ABO enrollees with United have continued to opt-out and find coverage elsewhere.  (*See* Otto Aff. ECF No. 16-3 (ABO is "seeking alternative coverage for the remaining one-third (1/3) of the individuals in the 'northeast region' . . . .")  In his affidavit, Otto attests that originally 691 employees needed alternative coverage (*id.*), however, at the hearing on August 11, 2022, he stated approximately 82 employees were remaining.[7]  This is significantly less than one-third (1/3) of the enrollee population remaining. Further, counsel for ABO, when discussing with the Court an appropriate bond amount if a preliminary injunction was granted, explained that the number of enrollees with United was expected to decrease dramatically due to employees of ABO feeling somewhat disenfranchised and actively seeking alternative coverage.

ABO has not established an injury that is "certain and immediate."  *See Sumner Cty. Schs.*, 942 F.3d at 327.  As counsel for ABO conceded at the hearing, if they cannot find alternative coverage for the remaining individuals by September 1, 2022, any remaining employees would be encouraged to obtain coverage through the Affordable Care Act.  Accordingly, while the Court finds that ABO's employees enrolled in health care coverage with United regrettably may suffer

---

[7] At the August 11, 2022 hearing, Otto explained that Jones would disenroll a significant number of individuals by the end of the day leaving 82 individuals remaining.

some harm by the Court not issuing a preliminary injunction, ABO has not sufficiently demonstrated immediate irreparable harm.  Since ABO has failed to meet its burden to show actual irreparable harm, "[s]tanding alone, this balances strongly against the issuance of a preliminary injunction.  *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) (citing *Hacker v. Federal Bureau of Prisons,* No. 06–12425, 2006 WL 2559792, at *8 (E.D.Mich. Sept. 1, 2006)).

**C.     Whether Issuance of a Preliminary Injunction Would Harm Others**

The other factors require only brief mention.  The third factor "requires the [c]ourt to evaluate whether the irreparable harm to [ABO] in denying a preliminary injunction outweighs any potential harm to [United] in granting equitable relief." *Atmosphere Hosp. Mgmt. Servs., LLC v. Royal Realties, LLC*, 2014 WL 12573827, at *2 (E.D. Mich. Mar. 25, 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  Here, the third factor weighs in favor of United.  ABO argues "any harm to [United], of which there is none, will be monetary in nature and can be addressed at a later time."  (ECF No. 16 at Pg ID 3212.)  United, however, argued at the hearing that there are regulatory and statutory implications of ABO's misrepresentation about its relationship with a PEO and it being forced to insure individuals from thirty-four (34) different states.

16

Both parties assert that contracts should bind them.  As such, this factor weighs in favor of United as granting relief could cause harm to United if the Court later determined that there was no breach of contract.  *See O'Brien Constr. Co., Inc. v. Thyssenkrupp Elevator Corp.*, No. 19-CV-10657, 2019 WL 1349619, at *4 (E.D. Mich. Mar. 26, 2019) (finding "that issuance of a preliminary injunction would cause harm to [d]efendant by allowing [the] [c]ourt to overlook the contract agreements negotiated by the parties.")  Moreover, as the Court has already found no immediate irreparable harm for ABO, this factor weighs in United's favor and demonstrates that further injunctive relief is unwarranted.

### D.    Public Interest

The fourth factor requires the Court to examine the public interest in evaluating whether to grant a preliminary injunction.  *Atmosphere Hosp. Mgmt. Servs., LLC,* 2014 WL 12573827, at *3.  ABO asserts that "the public interest is benefited by the enforcement of standard [g]roup health insurance policy language which sets forth the parties' mutual understanding of when and how a policy can be rerated or rescinded."  (ECF No. 16 at Pg ID 3213.)  In response, United argues that the policy authorizes United to terminate the policy and/or rerate premiums and that the contract should therefore be enforced.  (ECF No. 14 at Pg ID 2733.)  The Court finds that both parties bring arguments that the public interest would be served if the Court ruled that the contract is enforceable.  While the Court stops

short of stating whether a breach did or did not occur for purposes of this motion, it finds that this factor is neutral as both parties request the public interest be served in enforcing contractual obligations.

**Conclusion**

The Court is aware, that without further injunctive relief, ABO's employees and dependents may suffer some temporary inconvenience in finding alternative coverage.  However, the Court cannot ignore that ABO may have submitted a material misrepresentation in not disclosing that it utilizes a PEO, namely Back Office, which United may have attached "importance to it in making a decision or determining a course of action, including . . . calculation of rates . . . ."  (ECF No. 1-2 at Pg ID 16, 30, 44, 58.)  As such, the Court cannot issue any further relief.

In sum, when balancing the factors, the Court is not convinced that the present case demands the extraordinary remedy of a preliminary injunction.  The Court finds that ABO is unlikely to succeed on the merits of its claim, and will not suffer immediate irreparable harm, which weighs heavily against issuance. Further, neither the third nor fourth factor weigh exclusively in ABO's favor.  As such, the Court denies ABO's Motion.

Accordingly,

**IT IS ORDERED** that ABO's original request for a preliminary injunction (ECF No. 2) is **DENIED** as moot;

**IT IS FURTHER ORDERED** that ABO's subsequent request for a preliminary injunction (ECF No. 5) is **DENIED**;

**IT IS SO ORDERED.**

Dated and Time: August 12, 2022         s/Linda V. Parker
                   6:53 p.m.              LINDA V. PARKER
                                     U.S DISTRICT JUDGE