UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABO STAFFING SERVICES, INC.,

    Plaintiff/Counterclaim
    Defendant,

v.

    Civil Case No. 22-11696
    Honorable Linda V. Parker

UNITEDHEALTHCARE
INSURANCE COMPANY,

    Defendant/Counterclaim
    Plaintiff,

v.

DAVID OTTO *et al*.,

    Additional Counterclaim
    Defendants,

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF NO. 32)

This is a diversity action arising out of a health insurance contract dispute. On July 22, 2022, Plaintiff ABO Staffing Services Inc. ("ABO") initiated this lawsuit against its healthcare provider, UnitedHealthcare Insurance Company ("United"). (ECF No. 1.) On July 26, 2022, ABO filed a motion for a temporary restraining order and/or preliminary injunction, ECF No. 5, which the Court

subsequently denied on August 12, 2022, after weighing all relevant factors. (ECF No. 18.) On July 26, 2022, ABO filed its First Amended Complaint. (ECF No. 4.) On August 16, 2022, United answered the First Amended Complaint, and added counterclaims against ABO, as well as counterclaims against ABO Preferred Personnel Services, Inc., America's Back Office, Inc., David Otto, and Denise Sharpe as joined counterclaim defendants pursuant to Federal Rule of Civil Procedure 13(h). (ECF No. 21.)

The matter is presently before the Court on "Plaintiff's Motion For Leave to File Second Amended Complaint" ("SAC") filed on September 14, 2022. (ECF No. 32) United has filed a response to the motion. (ECF No. 34.) For the reasons that follow, the Court is granting in part and denying in part ABO's motion.

## I. FACTUAL BACKGROUND

The Court incorporates by reference the stated facts from the "Opinion and Order Denying Plaintiff's Motion for a Preliminary Injunction," which are derived from ABO's First Amended Complaint. (*See* ECF No. 18 at Pg ID 3231-37.) After the filing of ABO's Motion for Reconsideration upon the Court's denial of a TRO and/or preliminary injunction, ABO asserted that new allegations and facts arose to United's conduct, including the following: (1) United "has voluntarily extended coverage to September 1, 2022[,]" ECF No. 27 at Pg ID 3609; (2) the notice United provided to ABO's employees regarding the extension of coverage

"included intentionally disparaging claims about Plaintiff which [United] knew to be misleading prior to [United's] issuance of the notice[,]" *see id.*; and that (3) the original application submitted to United by ABO's insurance broker, HUB International Midwest, Limited ("HUB"), "included the response of 'yes' to the question whether Plaintiff 'utilized' a Professional Employer Organization (PEO) or Administrative Services Organization (ASO), contrary to UHC's claim that the 'initial' Application included a response of 'no' to this question[,]" *see id.* at 3609-10.  ABO seeks to amend its First Amended Complaint to include those additional facts and add numerous state law claims.  (ECF No. 32 at Pg ID 3855.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) instructs the courts to "freely grant[]" leave to amend "where justice so requires."  This is because, as the Supreme Court has advised, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.  *Id*.  An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is

3

subject to dismissal pursuant to Rule 12(b)(6). *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.) Moreover, the plausibility standard "does not impose a probability

4

requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.

### III. ANALYSIS

As an initial matter, the Court is troubled by the assertion that ABO failed to confer with United before filing its motion to amend. (ECF No. 36 at Pg ID 1207–08.) Eastern District of Michigan Local Rule 7.1 requires parties to seek concurrence before filing a motion. E.D. Mich. LR 7.1(a). If concurrence is not obtained, the motion must reflect:

> (A) there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought;
>
> (B) despite reasonable efforts specified in the motion or request, the movant was unable to conduct a conference; or
>
> (C) concurrence in this motion has not been sought because the movant or nonmovant is an incarcerated prisoner proceeding pro se.

5

E.D. Mich. LR 7.1(a)(2). The motion to amend fails to include a statement of concurrence and should have been stricken from the record for this failure. This conduct fails to satisfy the rule's requirements. It does not inform the Court of how or when the request to opposing counsel was made before the motion's filing to assess whether reasonable efforts were made to obtain concurrence.

United states the following: ABO's "counsel sent an email at 4:54 p.m. on Wednesday, September 14, 2022, announcing for the first time an intent to file a motion for leave to file a SAC . . . . Without waiting for a response from United's counsel or according any reasonable opportunity to review the proposed SAC, plaintiff's counsel filed the motion for leave with the Court at 5:11 p.m. the same day" (ECF No. 34 at Pg ID 3941-42; Ex. 2, ECF No. 34-3.[1]) Going forward, the Court mandates ABO's counsel to read, familiarize themselves with, and follow all requirements under the local rules and this Court's practice guidelines before filing any further motions. Failure to do so in the future will result in the striking of the filing.

**A. Bad faith, Dilatory Purposes, or Undue Delay**

In the motion to amend, ABO asserts that it should be allowed to amend its First Amended Complaint because "justice requires" to add HUB as a party, add

---

[1] Although United only attached the CM/ECF notification without the actual email correspondence from approximately twenty minutes prior, ABO's counsel does not dispute this fact.

newly discovered facts, and add new causes of actions based on those facts. (ECF No. 3865.) First, ABO maintains that it has not engaged in any bad faith, dilatory purposes, or undue delay in seeking this amendment. However, the Court is neutral as to the potential existence of bad faith on ABO's behalf. In ABO's "Response" to United's Counterclaim, ABO alleged numerous times when it filled out the January 17, 2019 application to United, that ABO "was not a PEO and did not utilize services of a PEO." (ECF No. 30 ¶¶ 131–141, Pg ID 3735–37.) However, in the present motion filed five days later, ABO appears to be attempting to shift the blame to HUB for a potential error in answering "yes" to the question of PEO utilization, but then changed the answer to "no," including emails with a HUB employee who could not recall making a change to the application. On one hand, ABO is stating that at the time of the January 17, 2019 application, it did not utilize a PEO but is also stating that the application should have been answered "Yes" but for the change by HUB. (ECF No. 32 at Pg ID 3864.) ABO also asserted that an "actual original application" dated January 14, 2019, included a "Yes" response. (ECF No. 27 at Pg ID 3618.) While this could have been an oversight by ABO's counsel, it does raise questions.

B. Prejudice to the Parties

ABO maintains that allowing it to file the SAC would not cause any prejudice to the parties. United does not dispute this argument. (ECF No. 34.)

**C. Futility of ABO's Second Amended Complaint**

ABO seeks to amend its First Amended Complaint to include the following new claims:

- **Count III** - TORTIOUS INTERFERENCE WITH BUSINESS CONTRACTS, EXPECTANCIES, AND/OR RELATIONS AGAINST DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY;

- **Count IV** - NEGLIGENCE AND/OR GROSS NEGLIGENCE AGAINST DEFENDANT, HUB INTERNATIONAL MIDWEST LIMITED;

- **Count V** - BREACH OF CONTRACT AND/OR BREACH OF IMPLIED CONTRACT AGAINST DEFENDANT, HUB INTERNATIONAL MIDWEST LIMITED;

- **Count VI** - INDEMNIFICATION, COMMON LAW INDEMNIFICATION, EQUITABLE INDEMNIFICATION, VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT, AND/OR CONTRIBUTION AGAINST DEFENDANT, HUB INTERNATIONAL MIDWEST LIMITED; and

- **Count VII** - RESPONDEAT SUPERIOR AGAINST DEFENDANTS UNITEDHEALTHCARE INSURANCE COMPANY AND HUB INTERNATIONAL MIDWEST LIMITED.

(ECF No. 32 at Pg ID 3868.) In support of these proposed amended claims, ABO states that the "additional claims are supported by the factual recitation herein and all applicable law" and "[a]ccordingly, none of the proposed, additional counts set forth in the proposed Second Amended Complaint are futile." (*Id.*)

### 1. <u>Breach of Contract (Count I) and Injunctive Relief (Count II)</u>

United maintains that because ABO already asserted a breach of contract claim in the First Amended Complaint, it does not justify an amendment. The Court agrees with this statement. However, because this breach of contract claim is not one of the claims asserted to be a "new claim" for purposes of the proposed Second Amended Complaint, this argument is irrelevant as Count I is not subject to review on this motion. Further, contrary to United's argument, the fact that a defendant answers a complaint doesn't preclude a plaintiff from amending it and forcing the defendant to answer again. This is common in civil litigation.

Next, ABO added a claim for "Injunctive Relief" labeled "Count II," despite not including it as a proposed amendment in its motion (ECF No. 32-2 at Pg ID 3881; ECF No. 32 at Pg ID 3868.) Because this count seeks a "Temporary Restraining Order and/or Preliminary Injunction" and the Court has already denied this request, ECF Nos. 18, 36, this claim is moot and would be futile.

### 2. <u>Tortious Interference (Count III)</u>

ABO seeks to add the following claims of tortious interference with business contracts and tortious interference with expectancies/business relations. (ECF No. 32 at Pg ID 3868.)

> *i. Tortious Interference with a Contract*

Under Michigan law, "tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Relative Time Films, LLC v. Covenant House Michigan*, No. 359645, 2022 WL 16858810, at *3 (Mich. Ct. App. Nov. 10, 2022) (quoting *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005)). A tortious interference with a contract claim has three elements that a plaintiff must prove: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id.* Regarding the third element, "[o]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v Genesys Health Care Sys*, 689 N.W.2d 145, 157–58 (Mich. Ct. App. 2004) (quotation marks and citation omitted). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises v RPF Oil Co*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (quotation marks and citation omitted). If a plaintiff fails to demonstrate a defendant's conduct was wrongful per se, "the

10

plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* (quotation marks and citation omitted).

ABO's argument that United interfered with a business contract fails as a matter of law. Michigan courts have held that a plaintiff cannot assert a tortious interference of a contract claim against the other party of the same contract. *See Derderian*, 689 N.W.2d at 158 ("A plaintiff, who is party to a contract, cannot maintain a cause of action for tortious interference against another party to the contract.") (citing *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993); *Jozlin v. U.S. Bank Nat. Ass'n*, No. 11-12749, 2012 WL 12760, at *8 (E.D. Mich. Jan. 4, 2012). ABO has not asserted that a contract existed between itself and its employees, or itself and any other individual which United could have interfered. As such, a tortious interference with a contract claim would be futile.

    ii.    *Tortious Interference with a Business Relation or Economic Expectancy*

To raise a claim of a tortious interference with an economic expectancy or business relationship, a plaintiff must allege "(i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage." *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citing

11

*Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1, 3 (Mich. 2012)). To show the existence of an 'intentional interference,' "a plaintiff must also allege that the interference was either (1) a *per se* wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the ... business relationship of another." *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.,* 323 F.3d 396, 404 (6th Cir. 2003); *see also Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984).

ABO does not allege any facts in the SAC plausibly showing that United engaged in an act that was wrongful per se, which again, is "inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises*, 829 N.W.2d at 348. The only action alleged against United in relation to ABO's employees involves United making alleged "disparaging claims about [ABO' in [United's] notice letter to [ABO's] employees." (ECF No. 32-2 ¶ 48, Pg ID 3880.) However, Michigan courts are clear that a defendant cannot be liable for a tortious interference claim where they have legitimate business reasons for the alleged conduct. *See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) (quoting *BPS Clinical Lab'ys v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996)) ("Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.")

12

United maintains that the alleged communication with ABO's employees involved providing information to members of the group health insurance policy and "[a]n insurance company communicating with its policyholders is not 'inherently wrong' or 'an act that cannot be justified under any circumstances.' " (ECF No. 34 at Pg ID 3925.)  The Court agrees.  An allegation of "disparaging claims" does not outweigh a party's right to speak about a contract where they have a legitimate interest.  *See, e.g., Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (1995) ("where the conduct allegedly causing the business interference is a defendant's utterance of negative statements concerning a plaintiff, privileged speech is a defense.") (internal citations omitted); *see also, e.g., Postill v. Booth Newspapers, Inc.*, 325 N.W.2d 511, 517 (Mich. Ct. App. 1982.) ("qualified privilege exists for 'all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty'.)  Thus, based on facts contained on the face of the proposed Second Amended Complaint, a claim for tortious interference with a business relation or economic expectancies would also be futile for failure to state a claim.

### 3. Respondeat Superior (Count VII)

ABO seeks to amend its First Amended Complaint to include a respondeat superior claim against United and HUB maintaining that both companies

"breached their respective duties and/or contracts within/or related to [ABO]," ECF No. 32-2 ¶ 90, Pg ID 3887, and that they "had 'control in direction' and 'final authority' over the supervision, training, oversight, investigation, discipline, and employment decisions" of their employees. (*Id.* ¶ 91.) Under the doctrine of respondeat superior "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v. Wayne Cnty.*, 803 N.W.2d 237, 244 (Mich. 2011); *see also Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 221 (Mich. 2006). ABO does not allege, nor is it apparent on the face of the SAC, that any of United's employees committed a tort against ABO for respondeat superior to attach. "Obviously, where there is no underlying tort, there can be no vicarious liability—whether or not an agency relationship is established." *Strach v. St. John Hosp. Corp.*, 408 N.W.2d 441, 447 (Mich. Ct. App. 1987). Regarding HUB, ABO does state facts of a plausible negligence claim against HUB for the alleged actions of its employee, Ms. Maureen Farrell, and her submission of the application to United. However, such a claim would be barred by Michigan's economic loss doctrine.

Under Michigan law, "[t]he economic loss doctrine prohibits a plaintiff from bringing tort claims that are factually indistinguishable from breach of contract claims." *LinTech Glob., Inc. v. CAN Softtech, Inc.*, No. 2:19-CV-11600, 2020 WL 1861989, at *2 (E.D. Mich. Apr. 14, 2020). "The doctrine draws a line between

14

breach of contract claims arising from commercial transactions, where commercial and contract law protect the parties' economic expectations, and tort actions intended to remedy unanticipated injuries as a result of conduct that violates a separate legal duty apart from the contract." *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 963 (E.D. Mich. 2017) (referencing *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615 (Mich. 1992)). The purpose of this doctrine is essentially to "prevent[] contract law from being "drown[ed] in a sea of tort." *ComSpec Int'l, Inc. v. Uniface B.V.*, No. 2:20-CV-10067-TGB-EAS, 2021 WL 4169726, at *8 (E.D. Mich. Sept. 14, 2021) (quoting *Huron Tool and Eng'g Co. v. Precision Consulting Serv., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995)). Because ABO's claims against HUB already allege a breach of contract claim involving the same underlying instances,—namely the actions of Ms. Farrell—the respondeat superior claim is barred under the economic loss doctrine as ABO will have the potential to recover from HUB under its contract claim. As such, allowing the SAC to include a claim for respondeat superior would be futile because ABO failed to state claims as to both United and HUB.

### 4. Gross Negligence and/or Negligence (Count IV)

ABO also seeks to amend its First Amended Complaint to include a new claim against HUB for common law negligence. Because of Michigan's economic loss doctrine, *see supra* Section III(C)(3), and the fact that ABO already raises a

15

breach of contract claim against HUB, ABO is barred from bringing the negligence claim due to it being factually indistinguishable from its breach of contract claim. *See LinTech Glob., Inc.*, 2020 WL 1861989, at *2. Thus, ABO has failed to state a claim for negligence against HUB.

## IV. CONCLUSION

Because this Court already ruled on the request for preliminary injunction, Count II in the proposed Second Amended Complaint is futile. Further, Because ABO failed to state a claim for a tortious interference with a contract, tortious interference with a business relation or expectancies, respondeat superior, and a negligence claim, allowing ABO to amend its First Amended Complaint to include those counts would also be futile.

Accordingly,

**IT IS ORDERED** that "Plaintiff's Motion for Leave to File a Second Amended Complaint" (ECF No. 32) is **GRANTED IN PART** as to Counts I, V, and VI, and **DENIED IN PART** as to Counts II, III, IV, and VII. ABO may amend its First Amended Complaint but shall only include Counts I, V, and VI.

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 7, 2023