UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABO STAFFING SERVICES, INC,

  Plaintiff/Counterclaim Defendant,

v.

                                  Case No. 22-cv-11696
                                  Honorable Linda V. Parker

UNITEDHEALTHCARE
INSURANCE COMPANY,

  Defendant/Counterclaim Plaintiff,

v.

DAVID OTTO *et al.*,

  Additional Counterclaim Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF NO. 38)

This is a diversity action arising out of a health insurance contract dispute. On July 22, 2022, Plaintiff ABO Staffing Services Inc. ("ABO") initiated this lawsuit against its healthcare provider, UnitedHealthcare Insurance Company ("United"). (ECF No. 1.) On July 26, 2022, ABO filed an Amended Complaint (ECF No. 4) and United filed an Answer on August 16, 2022. (ECF No. 21.) On September 14, 2022, ABO sought leave to file a Second Amended Complaint ("SAC") to add a defendant, HUB International Midwest Limited ("HUB") and assert additional causes of action. (ECF No. 32.)

The proposed SAC sought to assert the following: (I) breach of contract against United; (II) injunctive relief against United; (III) tortious interference with business contracts, expectancies, and/or relations against United; (IV) negligence and/or gross negligence against HUB; (V) breach of contract and/or breach of implied contract against HUB; (VI) indemnification, common law indemnification, equitable indemnification, violation of Michigan Consumer Protection Act, and/or contribution against HUB; and (VII) respondeat superior against United and HUB. (ECF No. 32-2.)

On June 21, 2023, the Court issued an Opinion and Order (the "Order") granting in part and denying in part ABO's motion for leave to file the proposed SAC. (ECF No. 37.) The Court granted the motion with respect to Counts I, V, and VI but denied as to Counts II, III, IV, and VII. (*Id.*)

Specifically, with respect to Count II, the Court held that this request was moot and futile as the Court previously denied ABO's request for a preliminary injunction. (*See id.* at PageID. 3983; *see also* ECF No. 18.) With respect to Counts III, IV and VII, the Court held that amending the Complaint to include these counts would be futile as ABO has failed to state a claim. (*Id.* at PageID. 3990.)

ABO now moves for reconsideration of the Court's Order. Particularly, pursuant to Local Rule 7.1(h)(2), ABO seeks reconsideration of the Court's rulings on Counts III, IV, and VII. (ECF No. 38.)

**Applicable Standard**

On December 1, 2021, the Eastern District of Michigan amended Local Rule 7.1(h), which lays out the procedures and standards for motions for reconsideration. The standard for a motion to reconsider a final order is now different than the standard for a motion to reconsider a non-final order. L.R. 7.1(h). Reconsideration of final orders must be sought under Federal Rules of Civil Procedure 59(e) or 60(b). *Id.* Because the order at issue in ABO's motion for reconsideration did not dismiss all of its claims and the Court did not issue a judgment or otherwise close the case, the Court's order was not final.

Now, "[m]otions for reconsideration of non-final orders are disfavored" and may only be granted on three grounds: (1) a mistake of the court "based on the record and law before the court at the time of its prior decision" if correcting the mistake would change the outcome of the prior decision; (2) "[a]n intervening change in controlling law warrants a different outcome"; or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." *Id.*

3

Here, ABO argues, pursuant to Local Rule 7.1(h)(2)(A), "[t]he court made a mistake," which needs correcting to "change[] the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision[.]" L.R. 7.1(h)(2)(A); *see also* ECF No. 38 at PageID. 4002.

## Legal Analysis

### Count III – Tortious Interference

With respect to Count III – tortious interference with business contracts, expectancies, and/or relations against United, the Court bifurcated its analysis. The Court first analyzed ABO's tortious interference with a contract claim, then analyzed its tortious interference with a business relation or economic expectancy claim. (ECF No. 37 at PageID. 3983-87.)  *See Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005) (internal citation omitted) ("In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy.").  A tortious interference with a contract claim has three elements that a plaintiff must prove: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id.*

4

> *i.   Tortious Interference with a Contract*

Starting with ABO's tortious interference with business contracts claim, the Court held that this claim failed as a matter of law because it did not allege a contract existed between itself and its employees or between itself and any other individual with whom United could have interfered.

ABO argues that the Court mistakenly reached this conclusion and directs the Court to paragraphs 60-62 of its proposed SAC which read as follows:

> 60. ABO Staffing had valid business relationships, expectancies, and/or contracts with its employees which entitled ABO Staffing to pecuniary benefits.
>
> 61. Defendant, [United], had knowledge of and was aware of the business relationships, expectancies and/or contracts possessed by the Plaintiff.
>
> 62. Defendant, [United], intentionally interfered with the valid business relationships, expectancies and/or contracts of the Plaintiff, including but not limited to, by inducing or causing breach or termination of the relationships, expectancies and/or contracts.

(ECF No. 3202 at PageID. 3882-83) (alterations added).

ABO is correct; however, correction of this does not change the outcome of the Court's ruling because ABO failed to establish a "per se wrongful act" by United. As set forth above, the third element of a tortious interference requires proof of an unjustified instigation of the breach by the defendant. Regarding this element, "[o]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing

5

of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v. Genesys Health Care Sys*, 689 N.W.2d 145, 157–58 (Mich. Ct. App. 2004) (quotation marks and citation omitted).

While a "per se wrongful act" is a necessary element to this claim, ABO has made no such allegation and the Court did not conduct an analysis on this element for this claim. *See Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. App. Ct. 2013) (internal citation omitted) ("By definition, tortious interference with a contract is an intentional tort. Indeed, it is well-settled that one who alleges tortious interference with a contractual relationship must allege the intentional doing of a per se wrongful act.") (cleaned up). Moreover, the Court conducted an analysis on whether a per se wrongful act was committed by United for ABO's tortious interference with a business relation or economic expectancy claim.

As such, an amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

  ii. *Tortious Interference with a Business Relation or Economic Expectancy*

To raise a claim of a tortious interference with an economic expectancy or business relationship, a plaintiff must allege "(i) the existence of a valid business

6

relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage." *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citing *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1, 3 (Mich. 2012)).

To show the existence of an 'intentional interference,' "[t]he plaintiff must also allege that the interference was either (1) a per se wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the . . . business relationship of another." *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003*); see also Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984).

"As a general matter, an act does not constitute improper motive or interference where the defendant's actions were motived by legitimate business reasons." *Scrappost, LLC v. Peony Online, Inc.*, No. 14-14761, 2017 WL 1105062, at *7 (E.D. Mich. Mar. 24, 2017) (internal quotations omitted); *see also Dalley v. Dkema Gossett*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) (same). United's August 19, 2022, letter to ABO's employees detailing the terms of the insurance plan was not a wrongful act. As the Court previously held in its prior

7

Order, United's letter was motivated by a legitimate business reason. (ECF No. 37 at PageID. 3987-88.)

ABO argues that whether conduct is "per se wrongful" is a question of fact and the Court mistakenly took the step of evaluating credibility. (ECF No. 38 at PageID. 4006.) ABO is incorrect. Courts routinely evaluate whether conduct is motivated by a legitimate business reason to negate liability at the motion to dismiss stage. *See Siddiqui v. General Motors Co.*, No. 302446, 2012 WL 335680, at *7 (Mich. Ct. App. Feb. 2, 2012) (affirming motion to dismiss and holding that "defendant's letter to its employees informing them of a change in its policy is not 'per se' wrongful, because the letter could be justified under many circumstances and is not in itself illegal, unethical, or fraudulent.").

Accordingly, no error was made. The Court, therefore, did not err in finding proposed Count III futile, as United's letter to its subscribers was motivated by legitimate business purposes and was not a per se wrongful act. (ECF No. 37 at PageID. 3987.)

<u>Counts IV & VII against HUB and the Economic Loss Doctrine</u>

Moving to Count IV – negligence and/or gross negligence against HUB and Count VII – respondeat superior against both United and Hub, the Court held that ABO failed to state a claim on both counts. (ECF No. 37 at PageID. 3987.)

Specifically, as it relates to Count VII – a respondeat superior claim against United, the Court first held that ABO did not allege that any of United's employees committed a tort for respondeat superior to attach. (*Id.* at PageID. 3988.) With respect to the same count against HUB, the Court held that ABO alleged facts sufficient for respondeat superior to attach but the claims were barred by Michigan's economic loss doctrine. (*Id.*)

The Court also held that Count IV – negligence and/or gross negligence against HUB was also barred by Michigan's economic loss doctrine. (*Id.* at PageID. 3899-90.)

As a preliminary matter, ABO does not dispute the Court's dismissal of Count VII against United for failure to adequately allege facts sufficient to support a claim for respondeat superior. (ECF No. 38 at 4007.) ABO only disputes dismissal of claims pursuant to the economic loss doctrine. (*Id.*) The Court will, therefore, limit its analysis to Counts IV and VII related to Defendant HUB.

The economic loss doctrine prohibits a plaintiff from bringing tort claims that are factually indistinguishable from breach of contract claims. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 240-41 (6th Cir. 1994). The doctrine flows from the recognition that "contract law and tort law are separate and distinct, and [that] courts should maintain that separation in the allowable remedies." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct.

9

App. 1995) (internal quotation marks and citation omitted).  The Court permitted ABO's Count V – breach of contract and/or breach of implied contract against HUB to proceed. (*See* ECF No. 37.)

While ABO does not dispute that the economic loss doctrine limits tort actions seeking to recover economic damages resulting from commercial transactions, it argues that Federal Rule of Civil Procedure 8 permits inconsistent pleading and pleading in the alternative.  (ECF No. 38 at PageID. 4007-08.)  ABO argues that the Court made a mistake by dismissing its pleading.  (*Id.* at 4008.)

ABO is incorrect.  While ABO is permitted to plead inconsistently or in the alternative, it is not permitted to plead claims that would be futile or would fail to state a claim for which relief could be granted.  ABO's proposed amendments would not survive a motion to dismiss because the claims are barred by the economic loss doctrine.  *See Cameron v. Am. Dental Tech.*, No. 94-70860, 1995 WL 599871, at *6-7 (E.D. Mich. June 8, 1995) (finding that "Plaintiffs' tort claims do not arise independently of the contract claims," and holding that "all of plaintiffs' tort claims are barred by the economic loss doctrine"); *see also Neibarger v. Universal Coop., Inc.*, 486 N.W.2d 612, 618 (Mich. 1992) (noting that allowing plaintiff to pursue an independent tort claim for a concern already addressed by UCC would render UCC meaningless and "contract law would drown in a sea of tort").

Because ABO's amendment would not survive a motion to dismiss, it would be futile. *Rose*, 203 F.3d at 420. The Court, therefore, did not err in denying ABO's amendment based on the economic loss doctrine.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ABO's motion for reconsideration (ECF No. 38) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 25, 2024